Laurence M. Rosen, Esq. (CSB# 219683)
THE ROSEN LAW FIRM, P.A.
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Tel: (213) 785-2610
Fax: (213) 226-4684
Email: lrosen@rosenlegal.com

Additional Counsel on Signature Page

## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

|  |  |
|---|---|
| DARREN MARTINEZ AND JOE MOCNIK, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, <br> Plaintiff, <br><br> vs. <br><br> BLU PRODUCTS, INC., and SHANGHAI ADUPS TECHNOLOGY CO., LTD., <br> Defendants. | Case No.: <br><br> **COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF AND RESTITUTION** <br><br> CLASS ACTION <br><br> **JURY TRIAL DEMANDED** |

Plaintiffs Darren Martinez and Joe Mocnik, individually and on behalf of all other persons similarly situated, by his undersigned attorneys, alleges in this Complaint the following upon knowledge with respect to each of his own acts, and upon facts obtained through an investigation conducted by his counsel, which included, *inter alia*: (a) review and analysis of defendants' public documents and statements relevant to the instant action; (b) review and analysis of the marketing materials utilized by defendant in connection with the marketing and sales of the

## CLASS ACTION COMPLAINT

products subject of the Complaint; (c) information readily obtainable on the Internet; and (d) interviews of witnesses with personal knowledge of the relevant facts.

Plaintiffs believe that further substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery. Additional facts supporting the allegations contained herein are known only to defendant or are exclusively within its control.

## I.    NATURE OF THE ACTION

1.    This is a class action on behalf of a class consisting of all persons and entities, other than defendants and its officers and directors, who purchased within the United States certain cellular telephones designed, manufactured, marketed, and sold by Blu Products, Inc. ("Blu Products"), and designed, marketed and manufactured by Shanghai Adups Tecchnology Co., Ltd. ("Adups"), under various model names that included firmware that retrieved, intercepted and transmitted to China the data and information of the consumers and users of the affected cellular phones (the "Products") seeking to recover damages caused by defendants' unlawful conduct and violations of various state consumer protection laws (the "Class").

2.    Blu Products is a Miami, Florida headquartered mobile phone manufacturer founded in 2009. Blu Products has sold over 35 million mobile devices in over 40 countries.

3.    Adups develops and implements software that controls the functionality of cellular telephones (generally referred to as "firmware"). As of September 2016, Adups claims to have a world-wide presence of over 700 million active users and a market share exceeding 70% across over 150 countries.

2

**CLASS ACTION COMPLAINT**

4.     Prior to the beginning of the Class Period, the Defendants designed and manufactured the Products to include the use of software developed by Defendant Adups (the "Adups Spyware"). The Products were then marketed and sold to the consumer directly by Blu Products to the end-user, or via retail through a third-party distributor.

5.     The Adups Spyware prevented the users from using their mobile phones for the typical purposes that the mobile phones are purchased for. In addition, the software unlawfully violated the privacy of the consumers.

6.     In particular, and unbeknownst to the Plaintiffs and the Class, the Adups Spyware  used in each of the Products intercepted private and personal activity and data created by the user, including text messages, phone call histories, and details of how the phone was being used.  After collecting such data for 72 hours, the Adups Spyware would then upload the data to a server in China owned and controlled by Defendant Adups.  Not only did this result in the unlawful interception and transmittal of personal and private data, but the software interfered with the user's mobile phone and cellular service experience, by, misappropriating the cellular data services purchased independently by the user and interfered with the users' cellular phone usage experience by, among other things, congesting their cellular data connection with uploading of the stolen information, and utilizing system resources to carry out said processes. Finally, the Adups Spyware created serious security vulnerabilities by allowing remote installation of applications on the Products without the knowledge or consent of the users.

7.     The Defendants knew that the Products utilized the Adups Spyware and that the Adups Spyware contained the interception and re-transmittal functions, and created serious security vulnerabilities, interfered detrimentally

**CLASS ACTION COMPLAINT**

with the user experience, and otherwise rendered the Products unfit for the purposes of which they were sold.  Despite this awareness, the Defendants caused the software to be installed because it financially benefitted from the software through the use and review of the data intercepted.

8.    On November 15, 2016, the existence of the Adups Spyware on the Products was discovered and widely disseminated by the press.  So severe was the security vulnerabilities that security commentators advised users of the Products to cease using the Products until the security matter was resolved.

9.    Given the widespread backlash, Blu Products has apologized to users, released a firmware update that removes the software components that enabled the unlawful interception and transmittal functions.

10.    Plaintiffs and the Class suffered damages as a result of each of their purchases of the Products because: (a) the Products performed less than reasonably expected due to the Adups Spyware; (b) the Products provided a lesser user experience than reasonably expected due to the Adups Spyware; (c) the cellular data services purchased by the Class was unlawfully interfered with, and without authorization, utilized by the Defendants; (d) their private data was exposed and transferred to third parties; and (e) they are exposed to a substantial risk of identity theft and related fraud.

11.    Plaintiffs were harmed by both the operations of the software (its discovery and transmittal of private information) and by being denied the value of what was marketed to Plaintiffs – a mobile phone that operated in accordance to the hardware specifications, fit for ordinary use.

12.    Had Plaintiffs and the Class members known of the true facts about the Products, they would either have not purchased them, or would have not purchased the Products at inflated prices.

**CLASS ACTION COMPLAINT**

## II.    JURISDICTION AND VENUE

13.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2).  The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000, at least one member of the class of plaintiffs is a citizen of a state different from defendants, and the number of members of the proposed class is in the aggregate 100 or more.

14.    This Court also has subject matter jurisdiction over the federal claims in this action pursuant to 28 U.S.C. § 1331.

15.    This Court also has subject matter jurisdiction over the state law claims in this action pursuant to 28 U.S.C. § 1367(a) because they are so related to the federal claims so as to form part of the same case or controversy under Article III of the United States Constitution.

16.    Exercise of jurisdiction over Defendants complies with the traditional notions of fair play and substantial justice as the Defendants purposefully availed themselves of the jurisdiction of this Court and reasonably foresaw that they would be subject of a lawsuit in this jurisdiction as a result of their marketing and directing the sales of the Products into California and through the residence and/or significant and pervasive contacts with this State that gave rise to the present claims.

17.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 in that many of the acts and transactions giving rise to this action occurred in this district and because Defendants:

    a)  are authorized to conduct business in this district and has
        intentionally availed itself of the laws and markets within this

**CLASS ACTION COMPLAINT**

district through the promotion, marketing, distribution and sale of its products in this district;

b) does substantial business in this district; and

c) are subject to personal jurisdiction in this district.

## III.    PARTIES

18.    Plaintiff Daren Martinez was at all relevant times a California citizen who resides in Los Angeles, California.  During the Class Period, Mr. Martinez purchased a Blu Products' R1 HD mobile phone.

19.    Plaintiff Joe Mocnik was at all relevant times a Tennessee citizen who resides in Ooltewah, Tennessee. During the Class Period, Mr. Mocnik purchased a Blu Products' Vivo Air, R1 HD, and Life One X2 mobile phones.

20.    At all relevant times herein, each of the plaintiffs was exposed to and saw Blu Products' claims and marketing concerning the Products that he or she purchased.  Particularly, in making each of their purchases, each of the plaintiffs saw and relied upon the marketing materials concerning the Products that he or she purchased.

21.    Unbeknownst to each of the Plaintiffs, each of the Products they purchased came with the Adups Spyware preinstalled.  Plaintiffs were not aware that the Adups Spyware was preinstalled, the purpose of Adups Spyware, the mechanics of Adups Spyware or that as a result, and detailed herein, their Products contained serious security vulnerabilities associated with the Adups Spyware, were not fit for their intended purpose, interfered with and utilized the mobile data services each of them independently purchased, intercepted and retransmitted personal and private information that they each entered into the Products, and provided substandard performance and user experience due to the Adups Spyware installation.    Accordingly, Plaintiffs did not receive the full

6

**CLASS ACTION COMPLAINT**

value of the product as marketed by Blu Products and were harmed through their purchases and use of the Products as alleged herein.

22.   Defendant Blu Products is a Delaware corporation headquartered in Miami, Florida.  Blu Products designs and markets mobile devices, and was founded in 2009.  Blu Products has sold over 35 million mobile devices in over 40 countries.

23.   Defendant Adups is a Chinese entity headquartered in Shanghai, People's Republic of China. Adups develops and implements software that controls the functionality of cellular telephones. As of September 2016, Adups claims to have a world-wide presence of over 700 million active users and a market share exceeding 70% across over 150 countries.

**IV.   FACTUAL ALLEGATIONS**

24.   Blu Products was founded in 2009 with an intended purpose to focus on the value oriented mobile devices market.  Since its founding, Blu Products has sold over 35 million mobile devices in over 40 countries.

25.   In connection with the design and development of its mobile devices, Blu Products retains third-parties to develop certain aspects of the devices. Among the functions Blu Products retained a third-party to develop and implement was the application layer that controls the hardware of the mobile device and the interoperability between the hardware and software.  Such an application layer is typically referred to as firmware.

26.   Prior to the beginning of the Class Period, Blu Products designed and developed the Products. Blu Products retained Adups to develop and implement the firmware that would control the Products designed and developed by Blu Products. Adups claims that its firmware is integrated into "more than 400

7

**CLASS ACTION COMPLAINT**

leading mobile operators, semiconductor vendors and device manufacturers spanning from wearable and mobile devices to cars and televisions."

27.    However, known to Blu Products, Adups presently markets itself as a means through which its partners can obtain "big data analytics," such as through obtaining user information.  Moreover, Adups has openly marketed its services including "app push service" (installing apps onto devices without the authorization of the user) and "device data mining."  Blu Products was well aware of Adups history in the spyware business and the services it offered.

28.    Throughout the process, Blu Products oversees and directs the third-parties that it retains to assist it in the development of its branded mobile phones, including the Products.  Moreover, after developing and implementing  the various components and software that comprise its mobile products, including the Products, Blu Products conducts, or should have conducted, testing of the devices to ensure that they meet the given specifications and are consistent with the terms by which Blu Products will market the devices.

29.    After the design and development of the Products, at the commencement of the Class Period, Blu Products began marketing and distributing the Products.  Blu Products nowhere indicated in the marketing or advertising of its mobile phones that the Products would contain the Adups Spyware or implement the various functions of the Adups Spyware, which began at least as early as June 2016.

30.    Since their release, Blu Products sold no less than 120,000 units of the Affected Phones.  The model names that the Products were marketed under include, but are not limited to, the following model names:

    a)  R1 HD

    b)  Energy X Plus 2

**CLASS ACTION COMPLAINT**

c)  Studio Touch

d)  Advance 4.0 L2

e)  Neo XL

f)  Energy Diamond

31.    Unbeknown to the Class, they had purchased mobile phones that contained extensive spyware that was intercepting, collecting and retransmitting information and data that they entered into the Products during their ordinary use.

32.    On November 15, 2015, the Class and consuming public first learned that the Products contained the Adups Spyware. On that date, Kryptowire, a provider of mobile enterprise security applications and security analytics, published the findings of its research that discovered the existence, and functionality, of Adups Spyware in the the Affected Devices.[1]

33.    As was disclosed in the Kryptowire report, and repeated widely throughout the mainstream media, the Adups Spyware  used in each of the Products intercepted private and personal activity and data created by the user, including text messages, phone call histories, and details of how the phone was being used.  After collecting such data for 72 hours, the Adups Spyware would then upload the data to a server in China (with a domain "bigdata.adups.com") owned and controlled by Defendant Shanghai Adup.

34.    The Adups Spyware was not the typical software application level spyware.  Rather, it was contained in the firmware of the Products.  This made the detection by standard spyware scanning products unlikely.

35.    Not only did this result in the unlawful interception and transmittal of personal and private data, but the software interfered with the user's mobile

---

[1]   https://www.kryptowire.com/adups_security_analysis.html     (last     viewed December 1, 2016)

**CLASS ACTION COMPLAINT**

phone and cellular service experience, by, misappropriating the cellular data services purchased independently by the user and interfered with the users' cellular phone usage experience by, among other things, congesting their cellular data connection with uploading of the stolen information, and utilizing system resources to carry out said processes.    Finally, the Adups Spyware created serious security vulnerabilities by allowing remote installation of applications on the Products without the knowledge or consent of the users.

36.    The Defendants knew that the Products utilized the Adups Spyware and that the Adups Spyware contained the interception and re-transmittal functions, and created serious security vulnerabilities, interfered detrimentally with the user experience, and otherwise rendered the Products unfit for the purposes of which they were sold.  Despite this awareness, the Defendants caused the software to be installed because it financially benefitted from the software through the use and review of the data intercepted.

37.    Given the widespread backlash, Blu Products has apologized to users, released a firmware update that removes the software components that enabled the unlawful interception and transmittal functions.    Despite the firmware update that purports to remove the spyware functions, the Defendants, at any time, can push an update to the Products that restarts the spyware functionality.  In short, the firmware product does little to protect the Class from future violations, and the Class are left with mobile phones that, at any time, can be turned into data tracking and syphoning devices.

38.    Given the competitive market for mobile phones, had consumers been truthfully informed regarding the functions of the Adups Spyware, the decrease in user experience caused by Adups Spyware and interference and use of the consumers wireless data packages, and the security vulnerabilities that they

10

**CLASS ACTION COMPLAINT**

will continue to be exposed to, consumers would have not purchased the Products
or purchased them at a substantially lower price.

39.    Plaintiffs purchased the Products in reliance upon the deceptive
advertising and marketing materials utilized by Blu Products in marketing the
Products.

40.    Plaintiffs received a product that intercepted and retransmitted their
personal information, performance lower than was reasonably expected given the
advertising of the specifications,  utilized for itself each of their wireless data
subscriptions, and that was not fit for ordinary use.

41.    Plaintiffs were damaged as a result of receiving a product that was
not as advertised, and was, in fact, inferior to that which was advertised since
Adups Spyware caused  the theft of their personal information, interfered and
improperly used their wireless data, and will continuously expose them to future
privacy violations and intrusions.

## V.    PLAINTIFFS' CLASS ACTION ALLEGATIONS

42.    Plaintiffs bring this lawsuit on behalf of themselves and the
proposed Class members under Rule 23(b)(2) and (3) of the Federal Rules of
Civil Procedure. Plaintiffs seek certifications of classes defined as follows:

> **Nationwide Class**
> All persons and entities who purchased within the United
> States a cellular telephone marketed and distributed by Blu
> Products and which at any point in time had the Adups
> Spyware installed.

43.    Pursuant to Fed. R. Civ. P. 23, Plaintiffs also bring claims that the
Company violated state consumer protection statutes on behalf of separate

**CLASS ACTION COMPLAINT**

statewide classes in and under the respective consumer protection statutes of each state in the United States. These classes are defined as follows:

### Statewide Sub-Classes

All residents of [name of State or District of Columbia] who purchased within the United States a cellular telephone marketed and distributed by Blu Products and which at any point in time had the Adups Spyware installed.

44.     Excluded from each of the above Classes are Defendants., including any entity in which either Defendant has a controlling interest, is a parent or subsidiary, or which is controlled by a Defendant, as well as the officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns of either of the Defendants. Also excluded are the judges and court personnel in this case and any members of their immediate families.

45.     The Class comprises many thousands of consumers throughout California and the United States. The Class is so numerous that joinder of all members of the Class is impracticable. There are questions of law and fact common to the Class. The common questions include:

a)  Whether Blu Products had adequate substantiation for the Products claims prior to making them;

b)  whether the claims by Blu Products concerning the specifications of the Products were true, or are misleading or reasonably likely to deceive given the installation of the Adups Spyware;

c)  whether the receipt and transmittals of the private information of the Class Members by Adups Spyware constitute an invasion of privacy;

12

**CLASS ACTION COMPLAINT**

d) whether the decrease in system performance and degradation of the user experience caused by Adups Spyware constitutes a trespass to chattel;

e) whether the concealment of Adups Spyware and/or the means of its operation constituted a fraud on consumers;

f) whether the alleged conduct violates public policy or constitutes violations of the laws asserted herein, including California Business and Professions Code §17500, *et seq.* by engaging in misleading or deceptive advertising; California Civil Code §1750, *et seq.*, by engaging in unfair or deceptive trade practices; California Code §1790, *et seq.*, by breaching express and implied warranties; and Business and Professions Code §17200, *et seq.*, by engaging in unfair, unlawful and/or fraudulent business practices;

g) whether plaintiffs and the Class members sustained monetary or other loss and the proper measure of that loss;

h) whether plaintiffs and Class members are entitled to an award of punitive damages; and

i) whether plaintiffs and Class members are entitled to declaratory or injunctive relief.

46.    Plaintiffs' claims are typical of the claims of the proposed Class, and Plaintiffs will fairly and adequately represent and protect the interests of the proposed Class.

47.    Plaintiffs do not have any interests antagonistic to those of the Class. Plaintiffs have retained competent counsel experienced in the prosecution of this type of litigation.

**CLASS ACTION COMPLAINT**

48.     The questions of law and fact common to the Class members, some of which are set out above, predominate over any questions affecting only individual Class members.

49.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The expense and burden of individual litigation would make it impracticable or impossible for proposed Class members to prosecute their claims individually. The trial and the litigation of Plaintiffs' claims are manageable.

50.     Unless a class is certified, Defendants will retain monies received as a result of its conduct that was taken from Plaintiffs and proposed Class members.

**<u>FIRST CAUSE OF ACTION</u>**
**Violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030**
**(As Against All Defendants)**

51.     Plaintiffs reallege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth here.

52.     By their conduct, as set forth above, Defendants violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 ("CFAA").  Pursuant to Section g of the CFAA, Plaintiffs herein asserts a claim against all Defendants for the violation of CFAA and the causing of losses to 1 or more persons during any 1-year period aggregating at least $5,000.00 in value.  18 U.S.C. § 1030(g); (c)(4)(A)(i)(I).

53.     CFAA prohibits one from :

      a) Knowingly causing the transmission of a software program, information, code or command, and as a result of such conduct,

**CLASS ACTION COMPLAINT**

intentionally causes damage without authorization, to a protected computer, Section 1030(a)(5)(A);

b) Intentionally accessing a protected computer without authorization, and as a result of such conduct, recklessly causes damages, Section 1030(a)(5)(B);

c) Intentionally accessing a protected computer without authorization, and as a result of such conduct, causes damage, Section 1030(a)(5)(C));.

d) intentionally accessing a protected computer without authorization, or in excess of an authorization, and obtaining information from the Class members' protected computers, 18 U.S.C. § 1030(a)(2).

54.    Under the Act, Plaintiffs' and Class members' cell phones are "protected computers" 18 U.S.C. § 1030(e)(2)(B), as they access the Internet and were used in interstate commerce and communication.[2]

55.    Defendants conduct constituted prohibited conduct under the Act, including the conduct prohibited in Sections 1030(a)(5) and 1030(a)(2). Defendants knowingly caused the transmission of Adups Spyware to consumers through the pre-installation of Adups Spyware into the Products.    The installation, existence and activity of the Adups Spyware occurred without the authorization by Plaintiffs or the Class, and, in any event, the Plaintiffs and the Class were unable to intelligibly authorize such an installation or activation as a result of the deceptive means and omissions of Defendants.

---

[2] For purposes of this claim, the Affected Products are also referred to as "computers."

15

**CLASS ACTION COMPLAINT**

56.     As part of this manufacturing process, a process implemented and controlled by Defendants, Defendants, by and through the Adups Spyware, accessed a protected computer,  reconfigured essential security components of the operating system thereby eliminated security layers in the Products and exposing Plaintiffs private data to unauthorized third parties as well as exposing Plaintiffs' to serious security vulnerabilities.   Defendants then, without authorization, or in excess of any authorization, continuously accessed the Class members' mobile phones in order to obtain information from the mobile phones.

57.     Defendants are liable to the Plaintiffs and the Class as their conduct was prohibited under Section 1030(a)(5) and either: (1) intentionally caused damage, (Section 1030(a)(5)(A)); (2) recklessly caused damaged (Section 1030(a)(5)(B)); (3) simply caused damage and loss (Section 1030(a)(5)(C)). Under the Act, "damage" includes "any impairment to the integrity of availability of data, a program, a system, or information." 18 U.S.C. § 1030(e)(8).  The installation and operation of Adups Spyware damaged the Products by modifying and reconfiguring operating system files on the mobile phones to the extent that the integrity of the system was impaired rendering the Products unusable for routine expected purposes by making the Products and information stored and transmitted by the Products vulnerable to security breaches, impairing the integrity of the information and availability thereto by exposing the Class members' information to third parties as well actively transmitting the data to unauthorized parties. Moreover, Adups Spyware damaged the Products by introducing additional overhead system utilization that caused the Products to use more energy and heat, as well as allocate finite resources to Adups Spyware resulting in decreased performance to the consumer.

**CLASS ACTION COMPLAINT**

58.    The impairment caused to Plaintiffs and the Class members' computers aggregates to at least $5,000.00 in value in any one-year period. As alleged herein, Plaintiffs have, among other things, been exposed to identify theft, the violation of their privacy, and been denied use of their computers, been denied full control and access to their computers.    18 U.S.C. § 1030(c)(4)(A)(i)(I).

59.    Defendants are independently liable to the Plaintiffs and the Class as their conduct was prohibited under 18 U.S.C. § 1030(a)(2) in that Defendants, through Adups Spyware, intentionally accessed the protected computers without authorization, or in excess of an authorization, and obtained information from the Class members' protected computers.

60.    Defendants are also each liable for conspiracy to violate CFAA.  18 U.S.C. § 1030(b).  Defendants entered into an agreement whereby Adups would develop and license for use by Blue Products  in the Products, the Adups Spyware software, and Blu Products and/or Adups would deploy the Adups Spyware software.  The Defendants took sufficient steps to improperly obtain private data from Plaintiffs and the Class, in violation of CFAA, through deceptive and unlawful practices resulting in the successful deployment of Adups Spyware and use by Plaintiffs and the Class, thereby causing Plaintiffs and the Class to be damaged as alleged herein.

61.    Pursuant to 18 U.S.C. § 1030(g), Plaintiffs seek compensatory damages in an amount to be determined at trial and injunctive relief on behalf of themselves and Class members.

**CLASS ACTION COMPLAINT**

## SECOND CAUSE OF ACTION

### Violation of the Federal Wiretap Act Title I of the ECPA (18 U.S.C. § 2510 *et seq.*)

### (As Against All Defendants)

62.     Plaintiffs reallege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein.

63.     Under the Electronic Communications Privacy Act of 1986 (ECPA) it is unlawful for one to intentionally intercept any wire or electronic communication, 18.U.S.C.A. § 2511(1)(a),  or intentionally disclose or use the contents of any wire or electronic communication where there is reason to know, or it is known, that the information was obtained in violation of the ECPA, 18.U.S.C.A. § 2511(1)(c); (1)(d).

64.     Defendants intentionally and without authorization intercepted, through Adups Spyware, the communications of Plaintiffs and the Class members transmitted to third parties through the Products and the internet.

65.     Defendants intentionally disclosed and used the contents of the communications unlawfully obtained in violation of ECPA 18.U.S.C.A. § 2511(1)(a) by processing the communications, and transmitting the data to third parties so that profiles of the Plaintiffs and Class members could be developed for use by Defendants and other third parties.

66.     Pursuant to 18.U.S.C.A. § 2520, Plaintiffs herein asserts a claim against all Defendants for the violation of ECPA and seeks statutory damages of $10,000.00 for each Plaintiff and Class member, punitive damages, injunctive relief, and reasonable attorneys' fees and litigation costs. 18.U.S.C.A. § 2520(b), (c).

**CLASS ACTION COMPLAINT**

### THIRD CAUSE OF ACTION
**Breach of Implied Warranties**
**As Against All Defendants**

67.    Plaintiffs reallege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein.

68.    Defendant Blu Products designed, marketed and placed the Products into the stream of commerce.  Defendant Adups developed, marketed, and implemented Adups Spyware and placed it into the stream of commerce, including within the Products, through its licensing agreement with Blu Products.

69.    Plaintiffs and members of the Class reasonably relied upon Blu Products' reputation, expertise and knowledge of Defendant Blu Products and upon its implied warranty that the Products were of merchantable quality and fit for their intended use.

70.    Plaintiffs and the Class had the reasonable expectation of being able to rely upon the Defendants that the system firmware and software would be developed in a competent fashion such that the software would not cause injure to the Plaintiffs and the Class by, among other things, intercepting and retransmitting their personal information, rendering unusable the Products upon which it was installed, interfering with the use and enjoyment of the Products, interfering and utilizing the consumer's cellular data service, and not expose Plaintiffs to serious security vulnerabilities.

71.    Defendants knew or had reason to know that Plaintiffs and the members of the Class were influenced by Defendants expertise, knowledge and judgment in furnishing Products fit for their intended use.

72.    However, Defendants breached the implied warranty of fitness for a particular purpose.  The Products were not fit for ordinary use, as they came installed with Adups Spyware that interfered with the use and enjoyment of the

19

**CLASS ACTION COMPLAINT**

Products, caused private data of the users to be shared unknowingly with third parties, and exposes the user to significant security vulnerabilities. Moreover, Adups Spyware was not fit for its purported purpose as firmware because it indiscriminately intercepted, and exposed to third parties, private data not appropriate for sharing, interfered with the expected operation of the Products, misappropriated the users' cellular data service, and created a serious security vulnerability. In addition, the software extensively reconfigured security layers of the operating system rendering uninstallation in the normal course problematic.

73.    The Plaintiffs and the Class purchased the Products for, among other things, browsing the internet, sending text messages and utilizing the Products to operate software of their choosing, and for the benefits of themselves and those they knowingly chose. Such use inherently includes the creation, transmission and storage of data intended to remain private and intended only for discovery by intended third parties, and the Plaintiffs and the Class reasonably expected that such products would contain industry standard security layers to protect their information and data transmission.

74.    In making their purchases, Plaintiffs relied upon the misrepresentations and omissions of Defendants, and were directly and proximately damaged as a result thereof, as alleged herein. The Plaintiffs and the Class members would not have purchased and/or paid as much for the Products had they known the truth about the Products.

**CLASS ACTION COMPLAINT**

## FOURTH CAUSE OF ACTION
### Trespass to Chattels
### (As Against All Defendants)

75.    Plaintiffs reallege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein.

76.    The common law prohibits the intentional interference with the use or possession of the personal property of another such that the interference results in the deprivation of the use of the chattel or impairs the quality, condition, or usefulness of the chattel.

77.    As set forth above, the Defendants caused to be installed Adups Spyware onto the Products.  Adups Spyware, installed and operating without authorization of the Plaintiffs or the Class, interfered with the Plaintiffs' use of the Products and impaired the usefulness of the Products by, among other things: (1) Utilizing finite system resources to monitor and transmit the private data of Plaintiffs; thereby increasing power usage, wear on components, and interfered with the expected performance of the system by creating decreased responsiveness to the user; (2) Used for its own purpose cellular data allotment caps, as well as bandwidth, of the Plaintiffs and the Class, thereby interfering with the performance and data access provided by the internet services purchased independently by the Plaintiffs and the Class resulting in a decreased internet experience of the user through slower responsiveness and completion times for data requests and reduced data access availability; (3) rendering the Products unusable in the ordinary course as a result of the severe security vulnerabilities caused by Adups Spyware.

78.    Defendants' acts thereby dispossessed Plaintiffs and the Class members from use and/or access to the Products, and impaired the use, value, and

**CLASS ACTION COMPLAINT**

quality of the Products, as well as the internet services purchased by Plaintiffs and the Class.

79. Accordingly, Defendants engaged in the trespass to chattels in violation of the common law, and Plaintiffs are entitled to damages in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION
### Negligent Misrepresentation
### (As Against Blu Products)

80. Plaintiffs reallege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein.

81. As set forth above, Blu Products misrepresented to Plaintiffs and each Class Member by means of its advertising, marketing and other promotional materials, the performance, usability, and functionality of the Products.

82. Blu Products made the misrepresentations herein alleged with the intention of inducing Plaintiffs and the public to purchase the Products.

83. Plaintiffs and Class members saw, believed, and relied on Blu Products' misrepresentations and, in reliance on them, purchased the Products. Said reliance was reasonable, given Blu Products' clout and generally good reputation among consumers. Plaintiffs and the Class were without the ability to determine the truth of these statements on their own and could only rely on Blu Products' statements in its advertising, marketing and other promotional materials and the Product's label.

84. At the time Blu Products made the misrepresentations herein alleged, it lacked a reasonable basis for believing the representations to be true.

85. As a proximate result of the foregoing negligent misrepresentations by Blu Products, Plaintiffs and the Class members were induced to spend an

**CLASS ACTION COMPLAINT**

amount to be determined at trial on the Products and were deprived of a product that met the performance expectations advertised pursuant to the specifications, that was usable in the ordinary course, did not unlawfully transfer the private information of the Class and expose the Class to serious security vulnerabilities. Accordingly, and as a proximate result of Blu Products' misrepresentations set forth herein, Plaintiffs and Class members lost the money they paid for the product in an amount to be determined at trial in that it did not have the qualities they sought, which Blu Products represented to them that it had.  Had Plaintiffs and the Class members known of the true facts about the Products, they would either have not purchased them, or would have not purchased the Products at inflated prices.

86.    Accordingly,  Plaintiffs and the Class have suffered damages in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION
### Breach of Implied Covenant of Good Faith and Fair Dealing
### (As Against All Defendants)

87.    Plaintiffs reallege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth here.

88.    A covenant of good faith and fair dealing is implied in every contract.

89.    To the extent that the Products, and the firmware which contained Adups Spyware, contained End User License Agreements (EULAs), these licenses constitute contracts between Defendants and the Class members including Plaintiffs.

90.    By engaging in the acts described herein, Defendants violated the implied covenant of good faith and fair dealing in the EULAs, by among other

**CLASS ACTION COMPLAINT**

things, denying Plaintiffs the opportunity to view said licenses prior to knowledge regarding the installation of Adups Spyware, misrepresenting the purpose of the EULA and the underlying software, and omitting material information concerning the firmware containing Adups Spyware, including the means through which it functioned including the reconfiguration of the operating systems security protocols and the installation of alternative certificates that exposed Plaintiffs and the Class private information to interception by third parties.

91.    As a result of Defendants conduct, Plaintiffs and the Class have suffered damages in an amount to be determined at trial.

## SEVENTH CAUSE OF ACTION
### Common Law Fraud
### (As Against All Defendants)

92.    Plaintiffs reallege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth here.

93.    Defendants knowingly and/or recklessly engaged in the deceptive acts, uniform misrepresentations and material omissions complained of herein in order to induce Plaintiffs and the Class members to purchase the Products and unwittingly use Adups Spyware on their Product without their knowledge. Defendants utilized the same deceptive acts to induce Class members to send their private data to Adups.

94.    Plaintiffs and the Class members relied upon Defendants' deceptive practices, uniform misrepresentations, and omissions.

95.    As a result of Defendants conduct, Plaintiffs and the Class have suffered damages in an amount to be determined at trial. Moreover, the imposition of punitive damages against Defendants is appropriate as the

24

**CLASS ACTION COMPLAINT**

complained of conduct was malicious, willful, wanton and oppressive, or in reckless disregard of the rights of Plaintiffs and the Class.

96.     Accordingly, Plaintiffs and the Class should be awarded restitution in the amount by which Defendants have been unjustly enriched, including, without limitation, all profits obtained by Defendants from its unlawful conduct.

## EIGHTH CAUSE OF ACTION
### Deceptive Advertising Practices
### (California Business & Professions Code § 17500, *et seq.*)
### (As Against Defendant Blu Products)

97.     Plaintiffs repeat and reallege the allegations of the preceding paragraphs as if fully set forth herein.

98.     Beginning prior to the start of the Class Period, and continuing to present, Blu Products engaged in advertising and marketing to the public, including the Class, and offered the Products for sale throughout the United States.

99.     Blu Products engaged in broad-based advertising and marketing efforts with the intention of inducing Plaintiffs and the public to purchase the Products

100.    Blu Products' advertisements and marketing representations concerning the expected performance, software standardization, usability, and functionality of the Products are false, misleading and deceptive as alleged herein.

101.    Blu Products also knowingly concealed, suppressed and consciously omitted material facts to Plaintiffs and other members of the Class knowing that consumers would rely on the advertisements and packaging to purchase the Products. Among the omissions includes that it was installing Adups Spyware,

25

**CLASS ACTION COMPLAINT**

that the performance of its Products were detrimentally impacted by the software installed by Defendants and thus would not perform according to the hardware specifications, that the software violated the members of the Class' privacy, exposed the Class' members to serious security vulnerabilities and misappropriate each of the Class members' wireless data subscription, and that the Products were not fit for normal use.

102.   At the time Blu Products made and disseminated the statements alleged herein, it knew or should have known that the statements were untrue or misleading, and acted in violation of Bus. & Prof. Code §17500, et seq. by issuing them nonetheless.

103.   The foregoing acts, omissions and practices directly, foreseeably and proximately caused Plaintiffs and other members of the Class to suffer an ascertainable loss and damages in the form of, *inter alia*, paying more money for the Product than they would have, and/or by purchasing the Product which they would not have purchased, if the benefits of taking the Product had not been misrepresented, in amounts to be determined at trial.   Plaintiffs and Class members are entitled to restitution, disgorgement, injunctive relief and all other relief allowable under §17500, et seq.

### NINTH CAUSE OF ACTION
**Unfair Business Practices**
**(California Business & Professions Code § 17200, *et seq.*)**
**(As Against All Defendants)**

104.   Plaintiffs repeat and reallege the allegations of the preceding paragraphs as if fully set forth herein.

105.   The Defendant's conduct, as alleged herein, constitutes unfair competition within the meaning of Bus. & Prof. Code § 17200, *et seq.*

26

**CLASS ACTION COMPLAINT**

106.   Defendant Blu Products' business activities of selling the Products through the use of untrue and misleading advertisements and marketing violated numerous laws governing Blu Products' conduct, as cited herein, and including, among others, Civ. Code §§1572 (fraud), 1709-1710 (willful deception to alter position); 1770(a)(5), 1770(a)(7) and 1770(a)(9) (CLRA violations).

107.   Defendant Adups' business activities of causing its Products to be installed and utilized by the Class, Defendants' continued use of said software to collect the personal and private information of the Class in order to derive for its own benefit revenues and profits, and the improper means through which Adups achieved such, including through the bypassing of security measures the Class reasonably expected not to be circumvented and by installing software the exposed the members of the Class to serious security vulnerabilities, violated numerous laws governing Defendant Adups' conduct, as cited herein, and including, among others, Civ. Code §§1572 (fraud), 1709-1710 (willful deception to alter position); 1770(a)(5), 1770(a)(7) and 1770(a)(9) (CLRA violations).

108.   Plaintiffs and the Class have suffered injury in fact and lost money or property as a result of such unfair competition.

109.   Plaintiffs, on behalf of themselves and the Class, seek an order of this Court awarding restitution, disgorgement, injunctive relief and all other relief allowed under §17200, et seq., plus interest, attorneys' fees and costs pursuant to, *inter alia*, C.C.P. §1021.5.

**CLASS ACTION COMPLAINT**

## TENTH CAUSE OF ACTION
### Breach of Express Warranty in Violation of
### Cal. Civ. Code § 1790 *et seq.* (Song-Beverly Consumer
### Warranty Act) and Cal. Comm. Code § 2313)
### (As Against Blu Products)

110.   Plaintiffs reallege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth here.

111.   Plaintiffs, and each member of the Class, formed a contract with defendant at the time Plaintiffs and the other members of the Class purchased the Product. The terms of that contract include the promises and affirmations of fact made by Blu Products on its Product labels and through its marketing materials and campaign, as described above.   This product labeling and advertising constitutes express warranties, became part of the basis of the bargain, and is part of a standardized contract between plaintiffs and the members of the Class on the one hand, and Blu Products on the other.

112.   All conditions precedent to Blu Products' liability under this contract have been performed by Plaintiffs and the Class.

113.   Blu Products has breached the terms of this contract, including the express warranties, with Plaintiffs and the Class by not providing the product which could provide the benefits represented as described above.

114.   As a result of Blu Products' breach of its contract, Plaintiffs and the Class have been damaged in the amount of the purchase price of the Products.

**CLASS ACTION COMPLAINT**

## ELEVENTH CAUSE OF ACTION
### Breach of Cal. Bus. & Prof. Code § 22947.3
### (As Against All Defendants)

115.    Plaintiffs reallege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth here.[3]

116.    Cal. Bus. & Prof. Code § 22947.3 prohibits the taking control of a consumer's computer, modifying computer settings, and the prevention of a user's efforts to block or disable software.

117.    By their conduct, Defendants violated the following provisions of the Cal. Bus. & Prof. Code § 22947.3:

(a)    22947.3(a)(2):  Adups Spyware accessed the consumer's internet service for the purpose of causing damage to the consumer's computer through the decrease in performance of the users' experience and circumventing multiple security layers meant to protect the consumers' private data;

(b)    22947.3(b): Adups Spyware modified security settings that were meant to protect the information of the consumers for the purpose of stealing the personal information of the consumer;

118.    As a result of Defendants conduct, Plaintiffs and the Class have suffered damages in an amount to be determined at trial.

## TWELFTH CAUSE OF ACTION
### Violation of California Invasion of Privacy Act ("CIPA")
### California Penal Code §§ 631 and 637.2
### (As Against All Defendants)

119.    Plaintiffs reallege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth here.

---

[3] For purposes of this claim, the Affected Products are also referred to as "computers."

29

**CLASS ACTION COMPLAINT**

120.   As a result of the conduct alleged herein, Defendants violated California Penal Code § 631.  California Penal Code makes it unlawful for one to "willfully or without consent," or by any unauthorized manner, "read[] . . . or learn the contents . . . of any communication" made while "in transit" "over any wire, line, or cable" by use of "any machine, instrument, or contrivance, or in any other manner."

121.   Through the use of Adups Spyware in the Products, the Defendants, in an unauthorized manner, read and learned of the contents of communications made by Plaintiffs and the Class by passing said communications from the Products through wire and cable services (the internet) to third parties.

122.   Plaintiffs' communications made through the Products with third parties are communications within the meaning of CIPA.

123.   Defendants intercepted Plaintiffs communications through the use of Adups Spyware infected Products, as well as the servers controlled by Defendants that received the information intercepted by Adups Spyware, that constitute machines, instruments or contrivances within the meaning of CIPA.

124.   The interception occurred while the communications were "in transit."  In fact, Adups Spyware was specifically developed, and implemented using the deceptive means as alleged herein, so that it could sit between the user and the third party with the purpose of intercepting the communication while in transit.

125.   The interception of the communications was done knowingly and willfully by the Defendants in order to profit.

126.    Defendants were not a party to the communications of Plaintiffs and the Class Members, and the Plaintiffs and Class Members did not consent or authorize Defendants to intercept the Plaintiffs' and Class' communications.

**CLASS ACTION COMPLAINT**

127.   As a result of the means by which Adups Spyware intercepted and directed the communications it intercepted, the communications were learned by Defendants within the State of California.

128.   Pursuant California Penal Code § 637.2, Plaintiffs and the Class bring this private right of action for Defendants' violation of CIPA.   Under Section 637.2, Plaintiffs need not have suffered any actual damages to obtain recovery.   In accordance therewith, Plaintiffs and the Class seek statutory damages in the amount of five thousand dollars ($5,000.00), or in the alternative and if greater, three times the amount of actual damages, along with injunctive relief and reasonable attorneys' fees.

## THIRTEENTH CAUSE OF ACTION
### Violation of the California Consumers Legal Remedy Act, Civ. Code §1750, *et seq.*
### (As Against All Defendants)

129.   Plaintiffs reallege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth here.

130.   Plaintiffs and the members of the Class are consumers who purchased the Products for personal and/or commercial use.

131.   Defendants engaged in deceptive practices, unlawful competition practices and/or unfair acts as defined by Civ. Code § 1750, et seq. ("CLRA") to the detriment of Plaintiffs and members of the Class who suffered harm thereby, as set forth herein.

132.   Defendants willfully and knowingly caused harm to Plaintiffs and the Class by utilizing false and misleading statements in the marketing, advertising, and promotion of the Products, and by utilizing deceptive practices to induce Plaintiffs to utilize the Products that contained Adups Spyware.

31

**CLASS ACTION COMPLAINT**

133.   Moreover, Defendants concealed material facts regarding Adups Spyware, its existence on the Products, and the means of its operations.  Such information is relied upon by consumers in making purchase decisions.

134.   Plaintiffs and the members of the Class relied upon Defendants' misrepresentation.  If Defendants had not made the misrepresentations and failed to disclose the material information regarding Adups Spyware and its means of functioning, Plaintiffs and the Class would not have purchased the Products or utilized Adups Spyware.

135.   By their conduct, Defendants violated the following provisions of the CLRA:

(a)  Civil Code § 1770(a)(2): Misrepresenting the source, sponsorship, approval, or certification of goods or services.

(b)  Civil Code § 1770(a)(5): Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities which they do not have.

(c)  Civil Code § 1770(a)(7): Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another.

(d)  Civil Code § 1770(a)(9): Advertising goods or services with intent not to sell them as advertised.

(d)  Civil Code § 1770(a)(19): Inserting an unconscionable provision in the contract.

136.   Pursuant to Civ. Code § 1780(a), Plaintiffs seek an order enjoining Defendant from engaging in the methods, acts or practices alleged herein.

**CLASS ACTION COMPLAINT**

137.   Irrespective of any representations to the contrary in this Class Action Complaint, Plaintiffs specifically disclaims, at this time, any request for damages or restitution under any provision of the CLRA.

138.   Plaintiffs, on behalf of themselves and the Class, have notified Defendants of the alleged violation of the CLRA, as required by Civ. Code § 1782(a).  If Defendants do not rectify its illegal acts within 30 days of the notice, Plaintiffs intend to amend this Complaint to seek relief pursuant to Civ. Code §1780 for actual damages,  restitution, punitive damages, attorneys' fees and costs; and other relief that this Court deems proper.

139.   In accordance with Civ. Code § 1780(d), Plaintiffs have annexed hereto a declaration establishing that venue is proper because many of the acts and transactions giving rise to this action occurred in this district and because Defendants are authorized to conduct business in this district and have intentionally availed themselves of the laws and markets within this district through the promotion, marketing, distribution and sale of its products in this district; do substantial business in this district; and are    otherwise    subject    to personal jurisdiction in this district.

## FOURTEENTH CAUSE OF ACTION
**Violation of the Non-California Consumer Protection Deceptive Trade Practice and Consumer Fraud Statutes**
**(As Against All Defendants)**

140.   Plaintiffs reallege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth here.

141.   This Cause of Action is pleaded in the alternative to the causes of action brought pursuant to California statute to the extent that such claims will

33
**CLASS ACTION COMPLAINT**

not be applied to non-California residents, or to the extent the California claims fail for any reason.

142.    Plaintiffs and the Class are consumers who purchased the Products designed, manufactured and distributed by Blu Products, and which contained Adups Spyware which was developed by, and distributed under license with the agreement of Adups.

143.    Defendants had a statutory duty to refrain from conduct that was unfair or deceptive in connection with the marketing and distribution of the Products and Adups Spyware to Plaintiffs and the Class.

144.    Defendants violated this duty by misrepresenting the nature, quality, usability and benefits of the Products, and omitting material information concerning the Products and Adups Spyware, and used other deceptive means to induce Plaintiffs to purchase the Products and utilize Adups Spyware.

145.    Plaintiffs and Class members were directly and proximately injured by Defendants conduct and would not have purchased the Products and/or paid as much for them, had they known the true nature of the Products.  As a result of Defendants conduct, Plaintiffs and the Class were damaged in that they failed to receive goods of the quality advertised or appropriate for their intended use, failed to receive the full bargain in that they did not receive Products usable in their ordinary course, suffered misappropriation of their internet service, had their privacy violated and private information procured by unauthorized third parties, and were exposed to serious security vulnerabilities rendering the Products of little value.

146.    Defendants' deceptive acts, misrepresentations and material omissions were, and are, unfair and deceptive acts and practices under each of the respective state consumer protection statutes.

**CLASS ACTION COMPLAINT**

147.    Defendants benefited through the deceptive acts by selling Products that were otherwise unmarketable, obtaining without authorization private data and communications of the Plaintiffs.

148.    Accordingly, each of the non-California Plaintiffs assert on behalf of themselves individually and the members of the Class consisting of residents from the same state as the individual Plaintiff(s), a claim pursuant to the following state consumer protection statutes[4]:

      a) Ariz. Rev. Stat. § 44-1522, *et. seq.*;

      b) Conn. Gen. Stat. § 42-110b, *et. seq.*;

      c) Fla. Stat. § 501.201, *et seq.*;

      d) Ga. Stat. § 10-1-392, *et seq.;*

      e) Idaho Code § 48-601, *et seq.*;

      f) Md. Comm. L. Code § 13-101, *et seq.*;

      g) Mass. Gen. L Ch. 93A, *et seq.*;

      h) Mich. Stat. § 445.901, *et seq.*;

      i) Minn. Stat. § 325F.67, *et seq.*;

      j) N.J. Stat. Ann. § 56:8-1, *et seq.*;

      k) N.Y. Gen. Bus. Law § 349, *et seq.*;

      l) N.C. Gen. Stat. § 75-1.1, *et seq.*;

      m) Okla. Stat. tit. 15 § 751, *et seq.*;

      n) Or. Rev. Stat. § 646.605, *et seq.*;

      o) 73 Pa. Stat. § 201-1, *et seq.*;

      p) Tex. Bus. & Comm. Code § 17.41, *et seq.* although Plaintiffs disclaim, at this time, any request for damages or restitution

---

[4] Plaintiffs herein allege that neither Defendant has a place of business or keeps assets within Massachusetts.  Plaintiffs therefore need not provide a notice of violation in connection with the assertion of claims pursuant to Mass. Gen. L Ch. 93A, *et seq.*

**CLASS ACTION COMPLAINT**

under any provision of the Texas Deceptive Trade Practices-Consumer Protection Act (DTPA);[5]

q) Va. Code § 59.1-196, *et seq.*;

r) Wash. Rev. Code § 19.86.010, *et seq.*; and

s) Wis. Stat. § 100.20*, et seq.*

## **RELIEF SOUGHT**

WHEREFORE, Plaintiffs pray for relief and judgment pursuant to the claims other than the claim asserted pursuant to CLRA, as follows:

a) Determining that this action is a proper class action and certifying Plaintiffs as class representatives under Rule 23 of the Federal Rules of Civil Procedure and Plaintiffs' counsel as Class Counsel;

b) Awarding actual and compensatory damages in favor of Plaintiffs  and the other Class members against Defendants for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

c) Restitution and disgorgement of all amounts obtained by Defendants as a result of its unlawful activities, together with interest thereon from the date of payment, to the victims of such violations;

d)  Awarding punitive damages in favor of Plaintiffs;

---

[5] Plaintiffs, on behalf of themselves and the Texas Sub-Class, have notified Defendants of the alleged violation of the DTPA, as required by Tex. Bus. & Comm. Code § 17.505.  If Defendants do not rectify its illegal acts within 60 days of the notice, Plaintiffs intend to amend this Complaint to seek relief pursuant to the DTPA for actual damages, restitution, punitive damages, attorneys' fees and costs; and other relief that this Court deems proper.

**CLASS ACTION COMPLAINT**

e) An Order requiring Defendants to immediately cease its wrongful conduct; enjoining Defendants from selling, directly or indirectly, the Products through the use of false and misleading statements complained of herein; ordering Defendants to engage in a corrective notice campaign; and requiring Defendants to implement a full replacement program of all Products, or, in the alternative and at the preference of Plaintiffs and each member of the Class, a refund for the purchased Products; and/or other equitable relief according to proof;

f) Awarding Plaintiffs and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees, and all applicable interest; and

g) Such other and further relief as the Court may deem just and proper.

Plaintiffs further prays, at this time and subject to amending, for relief and judgment pursuant to the CLRA for an order enjoining Defendant from engaging in the methods, acts or practices alleged herein.

## **JURY TRIAL DEMANDED**

Plaintiffs hereby demand a trial by jury.

Dated: March 31, 2017                          Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

  /s/ Laurence M. Rosen
Laurence M. Rosen (SBN # 219683)
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071

37

**CLASS ACTION COMPLAINT**

Telephone:  (213) 785-2610
Facsimile: (213) 226-4684
Email:  lrosen@rosenlegal.com

The Hinton Law Firm
Christopher S. Hinton
275 Madison Ave., 34th Floor
New York, NY 10016
Telephone: (646) 723-3377
Facsimile: (212) 202-3827
Email: chinton@hintonlegal.com


Attorneys for Plaintiffs

**CLASS ACTION COMPLAINT**

IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

DARREN MARTINEZ AND JOE
MOCNIK, INDIVIDUALLY AND ON
BEHALF OF ALL OTHERS
SIMILARLY SITUATED,
   Plaintiff,

  vs.

BLU PRODUCTS, INC., and
SHANGHAI ADUPS TECHNOLOGY
CO., LTD.,
   Defendants.

Case No.:

CLASS ACTION

## DECLARATION OF DARREN MARTINEZ IN SUPPORT OF VENUE

Darren Martinez, hereby declares:

1. I am a named plaintiff in the above-captioned action, brought on behalf of myself and all others similarly situated. I make this declaration pursuant to Cal. Civ. Code § 1780(d) in support of the Class Action Complaint and the claims therein for relief under Cal. Civ. Code § 1780(a). I have personal knowledge of the facts stated in this Declaration.

2. This action for relief under Cal. Civ. Code § 1780(a) has been commenced in a county that is a proper place for commencement and trial of this action because many of the acts and transactions giving

1   rise to this action occurred in this district and because Defendants are

2   authorized to conduct business in this district and have intentionally

3   availed themselves of the laws and markets within this district through

4   the promotion, marketing, distribution and sale of its products in this

5   district; do substantial business in this district; and are otherwise subject

6   to personal jurisdiction in this district.

7       I declare under the penalty of perjury that the foregoing is true and

8   correct this day of March 3, 2017.

Darren Martinez

2

**DECLARATION**